# In the United States Court of Federal Claims

No. 22-1271
(Filed:  25 September 2023)

*****************************************

| | |
|---|---|
| MARGARET ABARE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

*****************************************

*Morgan Bigelow*, Lubin & Enoch, PC, of Phoenix, AZ, with whom was *Sara Faulman*, McGillivary Steele Elkin LLP, of Washington, DC, for plaintiff.

*Daniel Bertoni*, Trial Attorney, with whom were *Igor Helman*, Senior Trial Counsel, *Reginald T. Blades, Jr.*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, and *Michael F. Kiely*, Attorney, Commercial & Appellate Litigation, United States Postal Service, all of Washington, DC, for defendant.

## OPINION AND ORDER

**HOLTE, Judge.**

Plaintiff, Margaret Abare, filed a complaint alleging breach of contract and requesting monetary damages.  Plaintiff's breach of contract claim arises from an alleged settlement agreement with the United States Postal Service related to an employment dispute.  The Equal Employment Opportunity Commission previously heard plaintiff's case and determined there was no settlement agreement.  The government moves to dismiss plaintiff's claims under Rule 12(b)(6) of the Rules of the Court of Federal Claims, alleging no contract existed and the United States Postal Service counsel lacked authority to enter into any settlement agreement.  Presenting what it admits is a novel argument, the government further contends the Equal Employment Opportunity Commission's decision precludes any court from granting relief.  As the Federal Circuit has noted in other cases where the government has made similar arguments of preclusion, this contention "open[s] . . . [the government] up to the criticism that it has used its overwhelming resources to whipsaw a citizen into submission."[1]  For the following reasons, the Court denies the government's Motion to Dismiss.

---

[1] *VanDesande v. United States*, 673 F.3d 1342, 1351 (Fed. Cir. 2012).

## I.    Background

### A.    Factual History[2]

Plaintiff, Margaret Abare, was a United States Postal Service ("USPS") mail handler in Maricopa County.  Compl. ¶¶ 2–3, ECF No. 1.  She submitted an Equal Employment Opportunity ("EEO") complaint related to her USPS employment in 2018.  *Id.* ¶¶ 3, 11.  On 20 November 2020, the EEO Commission ("EEOC") administrative judge "issued an order scheduling an initial conference," which required the parties to "discuss specific settlement proposals" and the representatives to "have the authority to settle the complaint during the Initial Conference."  *Id.* ¶ 12 (quoting Compl. Ex. A ("EEOC Order Scheduling Initial Conference") at 2, ECF No. 1-1).  An attorney representing plaintiff emailed USPS counsel on 11 December 2020, providing "specific settlement terms, including waiver and withdrawal of claims, monetary payment amounts, and the expiration of the offer."  Compl. ¶ 13; *see* Compl. Ex. B ("Pl.'s 11 Dec. 2020 Email") at 1, ECF No. 1-2.  The administrative judge stayed the proceedings "to allow the parties to mediate the matter."  Compl. ¶ 15.  Plaintiff's counsel made another settlement offer on 7 April 2021, "providing a waiver and withdrawal of claims, a provision to facilitate [plaintiff]'s retirement application, and the monetary payments."  *Id.* ¶ 17.  On 17 May 2021, plaintiff's attorney and USPS counsel discussed settlement over a phone call, and USPS counsel represented USPS "was willing to settle the matter for $180,000."  *Id.* ¶ 19; *see* Compl. Ex. C ("May 2021 Emails") at 3–4, ECF No. 1-3.  Over email following the call, plaintiff's attorney asked, "[W]hat is your client's current offer to my client?"  May 2021 Emails at 3; Compl. ¶ 20.  USPS counsel responded, "$180[,000] inclusive of comp[ensation] and att[orney]'s fees."  May 2021 Emails at 3; Compl. ¶ 20.  Plaintiff's attorney replied, "My client accepts this offer, I think we can go ahead with the filing you mentioned to the judge letting him know that it's only a matter of finalizing it."  May 2021 Emails at 3; Compl. ¶ 20.  In drafting the filing for the administrative judge, USPS counsel requested use of the language "agreement in principal."  May 2021 Emails at 1.  Plaintiff and USPS filed a joint report the same day, stating: "[T]he parties are happy to inform the [EEOC] that they have recently been able to enter an agreement in principle."  Compl. Ex. D ("17 May 2021 J. Report") at 2, ECF No. 1-4.

"On July 19, 2021, [plaintiff's attorney] informed [USPS counsel] that [p]laintiff had submitted a disability retirement application in order to comply with the settlement agreement."  Compl. ¶ 22.  Plaintiff clarified at oral argument the government did not communicate with plaintiff between May and August.  *See* 24 May 2023 Oral Arg. Tr. ("Tr.") at 76:2–17, ECF No. 16 ("THE COURT:  What occurred between May and August?  [PLAINTIFF]:  . . . So after the parties on May 17th filed the notice of settlement, in July, [plaintiff's attorney] informed [USPS counsel] that [p]laintiff had submitted a disability retirement application . . . .  We did not hear from the agency again until late August when we were informed that the agency is unwilling to enter into previously discussed settlement agreements.").  "On August 25, 2021, [USPS counsel] alleged for the first time that the settlement was pending 'final settlement authority' and cited

---

[2] For the government's Motion to Dismiss, the Court "accept[s] as true all undisputed facts asserted in the plaintiff's complaint."  *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016) (quoting *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)); *see also Athey v. United States*, 908 F.3d 696, 705 (Fed. Cir. 2018) (requiring for RCFC 12(b)(6) motions, the Court "must accept well-pleaded factual allegations as true" (quoting *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014))).

different factual issues [USPS] suddenly found with [p]laintiff's EEO complaint."  Compl. ¶ 23.
On 24 September 2021, USPS counsel informed plaintiff USPS "is unwilling to enter into the
previously discussed settlement agreement."  *Id.* ¶ 24.  "On October 22, 2021, pursuant to 29
C.F.R. § 1614.504, [p]laintiff informed [USPS] that it had breached their reached settlement
agreement and requested that [USPS] specifically implement the agreement terms."  *Id.* ¶ 28.
USPS determined there was no binding settlement agreement.  *Id.* ¶¶ 6, 29.  Plaintiff appealed
USPS's determination to the EEOC, and the EEOC affirmed.  *Id.* ¶¶ 6, 29–30; *see* Compl. Ex. E
("15 June 2022 EEOC Decision"), ECF No. 1-5.  USPS "has not issued any payment to
[p]laintiff."  Compl. ¶ 31.

## B.   Procedural History

Plaintiff filed her Complaint on 9 September 2022.  *See* Compl.  The government filed a
motion to dismiss on 8 December 2022.  *See* Def.'s Mot. to Dismiss for Failure to State a Claim
("MTD"), ECF No. 6.  Plaintiff responded on 5 January 2023, *see* Pl.'s Resp. to Mot. to Dismiss
("Pl.'s Resp."), ECF No. 8, and the government replied on 19 January 2023, *see* Def.'s Reply in
Supp. of Mot. to Dismiss ("Gov't's Reply"), ECF No. 9.  The Court held oral argument on the
government's Motion to Dismiss on 24 May 2023.  *See* Order, ECF No. 14; Tr. at 1.

## II.   Claim Preclusion

### A.   Parties' Arguments

The government argues "The EEOC's judgment fulfills all three requirements to preclude
Ms. Abare's claims in this Court:  privity, a final decision on the merits, and an identical claim."
MTD at 6 (citing *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)).  The
EEOC could have granted the money damages plaintiff seeks here, the government further
contends.  *Id.*  Plaintiff was the complainant before the EEOC, and the Postmaster General and
USPS—both in privity with the government—were the respondents, the government notes.  *Id.*
(quoting *Schrader v. United States*, 75 Fed. Cl. 242, 249 (2007) ("For purposes of res judicata,
the United States is in privity with its authorized officials.")).  The government asserts plaintiff's
suit here is subject to claim preclusion because the EEOC decision was final when plaintiff did
not seek direct review by requesting reconsideration from the EEOC or filing suit in a district
court.  *Id.*  The government characterizes this suit as a "collateral proceeding" and further states
"direct review of an EEOC decision may not be obtained in this [c]ourt because this [c]ourt is
not a district court."  *Id.*; Gov't's Reply at 3.  Plaintiff's claim here is identical to her EEOC
claim, the government argues, because "[s]he alleges in this [c]ourt, as she did before the EEOC,
that USPS, through the same email correspondence between counsel, entered into a settlement
agreement with her and that USPS subsequently breached the purported settlement agreement."
MTD at 7.

Plaintiff contends claim preclusion is inappropriate because her suit in this court is
contemplated by EEOC regulations.  Plaintiffs reads 29 C.F.R. § 1614.407(c) as allowing an
EEOC claimant to "file a civil action within 90 days of receiving th[e EEOC's] final decision."
Pl.'s Resp. at 6.  Plaintiff further cites the EEOC decision's statement she has the "right to file a
civil action in an appropriate United States District Court within ninety (90) calendar days from

the date [she] receive[s] this decision." *Id.* (alterations in original) (quoting 15 June 2022 EEOC Decision at 5). Plaintiff exercised her right to file a civil action through this suit, she asserts, because this court "has exclusive jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2000), for contract claims against the United States for more than $10,000." *Id.* at 7.

The government replies "the plain text of the Civil Rights Act of 1964 and its implementing regulations limits jurisdiction over civil actions based on EEOC decisions to Federal district courts." Gov't's Reply at 5 (first citing 42 U.S.C. § 2000e-5(f)(3); and then citing 29 C.F.R. § 1614.407(c)). "[W]hen this [c]ourt has exercised Tucker Act jurisdiction over claims of breach of EEOC settlements," the government argues, "the claims were brought in this Court in the first instance, without an earlier judgment from the EEOC." *Id.*

### B.      Applicable Law

"A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). A later claim may be precluded by an earlier judgment when: "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)).

### C.      Whether Plaintiff's Complaint Is Barred by Claim Preclusion

#### 1.      Whether the Parties Are Identical or in Privity

Plaintiff does not contest whether the parties from the EEOC proceeding are either identical to or in privity with the parties in this case. *See* Tr. at 9:1–7 ("THE COURT:  . . . [D]o you contest the parties from the EEOC proceeding are either in privity or identical to the parties here?  [PLAINTIFF]:  No, Your Honor, we do not contest that."). The Court therefore does not analyze the party identity element of the claim preclusion analysis. *See id.*; *Ammex*, 334 F.3d at 1055.

#### 2.      Whether the EEOC Decision Is a Final Judgment on the Merits

Plaintiff does not contest whether the EEOC's decision was a final judgment on the merits. *See* Tr. at 10:18–20 ("THE COURT:  And you agree that that is . . . a final EEOC decision?  [PLAINTIFF]:  Yes, within the EEOC, yes."). Although the Court addresses the effect of the EEOC's decision *infra* Section II.C.4, the Court accordingly does not analyze the final decision element of the claim preclusion analysis. *See* Tr. at 10:18–20; *Ammex*, 334 F.3d at 1055.

#### 3.      Whether the Same Facts Are at Issue

Plaintiff does not contest whether the same facts are at issue here compared to the EEOC proceeding. *See* Tr. at 48:4–9 ("THE COURT:  . . . [D]oes plaintiff contest that the same facts

are at issue here as were in the EEOC proceeding regarding the existence of a settlement agreement?  [PLAINTIFF]:  Yes, Your Honor, we do concede that.").  The Court therefore does not analyze the factual similarity element of the claim preclusion analysis.  *See id.*; *Ammex*, 334 F.3d at 1055.  The Court finds each of the three elements for claim preclusion are met here: privity exists; the EEOC's decision was final; and the same facts are at issue.

### 4.      Whether an Exception to Claim Preclusion Applies

The parties dispute whether claim preclusion applies, notwithstanding the existence of privity, finality, and similarity of facts.  Even when these three elements have been met, claim preclusion can have exceptions.  At oral argument, the government indicated "*Cunningham* sets up the principles by which an agency decision . . . may receive preclusive effect."  Tr. at 35:5–6.  In *Cunningham*, however, the Federal Circuit agreed with this court on the existence of all three elements of preclusion but nevertheless determined the plaintiff's claim was not subject to res judicata.  *Cunningham v. United States*, 748 F.3d 1172 (Fed. Cir. 2014).  There, the plaintiff was terminated from the Inspector's Office of the Office of Personnel Management ("OPM") and appealed his termination at the Merit Systems Protection Board ("MSPB").  *Id.* at 1174.  During MSPB proceedings, the plaintiff and OPM reached a settlement agreement.  *Id.*  The plaintiff later petitioned the MSPB to enforce the agreement.  *Id.* at 1175.  The MSPB, adopting an administrative law judge's recommendation, found a breach of contract, but the MSPB "lacked authority to award damages for OPM's breach," *id.*, because it was limited by "the only remedies its jurisdiction permitted:  rescission and reinstatement," *id.* at 1173.  The plaintiff subsequently brought an action in this court alleging breach of contract.  *Cunningham*, 748 F.3d at 1174 (citing *Cunningham v. United States*, 108 Fed. Cl. 208 (2012)).  This court found the MSPB's decision barred the plaintiff's claim due to the existence of privity, finality, and similarity of facts.  *Id.* (citing *Cunningham*, 108 Fed. Cl. at 221–24).  On appeal, the Federal Circuit did "not disagree with the Claims Court's application of the three res judicata elements to [the plaintiff]'s claim" but found "an exception to the rule [was] applicable."  *Id.* at 1179.  Looking to the Restatement of Judgments and precedent, the Federal Circuit indicated claim preclusion could not bar a claim when a tribunal's "remedial authority in the first action prevented the plaintiff from seeking the relief sought in the section action."  *Id.*  The court noted "it is the remedies *available* to the plaintiff in a forum of limited jurisdiction, not the remedies *sought* by the plaintiff, that determine whether res judicata bars a subsequent claim in a different forum."  *Id.* at 1180 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(c) (AM. L. INST. 1982)).  The court indicated this exception permitted the plaintiff's claim in this court, despite the MSPB decision, as the Restatement indicates "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, *subject to the same exceptions and qualifications*, as a judgment of a court."  *Id.* at 1181 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 83(1)).  The court therefore found claim preclusion did not bar the plaintiff's claim.  *See id.*

The government attempts to differentiate the MSPB in *Cunningham* and the EEOC by pointing to the EEOC's ability to enforce settlement agreements.  *See* MTD at 5n.3.  The government states "[i]n contrast [to the MSPB], the EEOC possesses authority to 'order . . . compliance' with a settlement agreement . . . and could have granted [plaintiff] complete relief, had it determined that a settlement agreement existed."  *Id.* (citation omitted).  The EEOC

authority the government points to, however, may not result in claim preclusion if the "remedies available to the plaintiff" at the EEOC do not overlap with this court's. *See Cunningham*, 748 F.3d at 1180. The Restatement indicates:

> [T]he general rule of [claim preclusion] does not apply to extinguish a claim . . . [when] [t]he plaintiff was unable . . . to seek a certain remedy or form of relief in the first action because of *the limitations on the subject matter jurisdiction* of the courts or restrictions on their authority to entertain . . . demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to . . . seek that remedy or form of relief.

RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(c). As *Cunningham* noted, this exception applies to administrative tribunals as well. *See Cunningham*, 748 F.3d at 1181 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 83(1)). The regulation cited by the government provides: "[i]f the Commission determines that the agency is not in compliance with a decision or settlement agreement . . . *it may order such compliance* with the decision or settlement agreement, or, alternatively, for a settlement agreement, *it may order that the complaint be reinstated.*" 29 C.F.R. § 1614.504(c) (emphasis added). The EEOC's regulations therefore permit only two remedies for breach of a settlement agreement: specific performance or reinstatement of a complaint. These two remedies alone are not coextensive with the full remedial authority of this court invoked in this case. Indeed, plaintiff is seeking *damages* for breach of contract, not *specific performance*. *See* Compl. at 9. The EEOC cannot award damages for breach of contract. *See* 29 C.F.R. § 1614.504(c). This lack of ability to award damages therefore permits plaintiff's claim to fall into the exception identified in *Cunningham*. Like the MSPB, the EEOC lacks the ability to award the remedies available in this court for breach of contract, and therefore claim preclusion cannot apply.

Despite the lack of claim preclusion, the Court nevertheless addresses plaintiff's argument which presents this case as a "direct review" of the EEOC's decision. Plaintiff contends "this court, rather than a district court, is the correct court for direct review of EEOC decisions regarding the existence of a settlement agreement." Tr. at 10:3–7. The government asserts plaintiff's suit in this case is a collateral attack on the EEOC decision. MTD at 6. As the Court confirmed multiple times at oral argument, the parties agreed there is no precedent on whether this court can directly review an EEOC decision regarding the existence of a settlement agreement. Tr. at 11:3–9 ("THE COURT: . . . Do you have any case law regarding whether this court can directly review an EEOC decision regarding the existence of a settlement agreement pursuant to the Tucker Act? [THE GOVERNMENT]: Your Honor, we do not have any case law that directly shows that."); Tr. at 11:16–17 ("THE COURT: [Plaintiff], any direct case law? [PLAINTIFF]: No, Your Honor."); Tr. at 12:8–12 ("THE COURT: . . . [Any c]ase law distinguishing direct review of agency determinations from collateral attack? [THE GOVERNMENT]: Your Honor, I don't have a case on point there . . . ."). Although the government does not dispute the Court's jurisdiction here, the Federal Circuit's *VanDesande* decision on this court's jurisdiction over alleged contracts arising from EEOC proceedings is instructive: "While there may not be an EEOC regulation that expressly authorizes judicial enforcement actions, the absence of an agency regulation does not per se determine the jurisdiction of a federal court to hear an appeal from the agency. . . . Simply because an

employee chooses to initially pursue enforcement through the EEOC does not preclude her from later seeking enforcement in a court of competent jurisdiction." *VanDesande v. United States*, 673 F.3d 1342, 1346 n.2, 1347 (Fed. Cir. 2012).[3] Like in *VanDesande*, plaintiff chose "to initially pursue enforcement through the EEOC." *Id.*; se*e* 15 June 2022 EEOC Decision. Despite plaintiff's framing, however, her claim here is for breach of contract. *See* Compl. The EEOC's decision is not on "direct review" to this court. Instead, the Court reviews the formation of and breach of the alleged settlement agreement.

The Tucker Act provides this court with jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). As the Federal Circuit held in *Holmes*, this court's "Tucker Act jurisdiction may be exercised in a suit alleging breach of a Title VII settlement agreement." *Holmes*, 657 F.3d at 1312. As in *Holmes*, plaintiff alleges "breach of a Title VII settlement agreement," and plaintiff now seeks "enforcement in a court of competent jurisdiction," as the government agreed at oral argument. *Id.*; *VanDesande*, 673 F.3d at 1346 n.2; Tr. at 13:20–24 ("THE COURT: Would [the] government agree that this court is a court of competent jurisdiction as to plaintiff's claims for damages on a breach of contract theory? [THE GOVERNMENT]: Yes, Your Honor. We agree that this court has jurisdiction . . . ."); *see* 28 U.S.C. § 1491(a)(1); Compl. ¶ 43. *VanDesande* therefore undermines the government's argument plaintiff's present suit is a collateral attack on the EEOC decision. *See* 673 F.3d at 1346 n.2. The Court neither directly reviews the EEOC's decision nor collaterally attacks it; the Court instead reviews whether monetary damages are available for plaintiff's claim of "breach of a Title VII settlement agreement." *See Holmes*, 657 F.3d at 1312.

The Court's jurisdiction may also be assessed in light of EEOC regulations and lack of district court review. The EEOC decision provides notice of the complainant's right to file a civil action: "You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision." 15 June 2022 EEOC Decision at 5 (emphasis omitted). EEOC regulations further provide a complainant may bring a complaint on the merits of the EEOC's final decision at a district court pursuant to "[T]itle VII, the ADEA, the Rehabilitation Act, and Genetic Information Nondiscrimination Act." 29 C.F.R. § 1614.407. These statements from the EEOC, however, direct district court review of the EEOC's determination on the merits of an underlying employment discrimination claim, not a determination on whether a contract with the government has been formed, as evidenced by the regulation's reference to employment law statutes. *See id.* Multiple district courts have indeed found they lack jurisdiction over enforcement of an EEOC settlement agreement. *See, e.g., Mata v. Geren*, No. SA-08-CA-709, 2009 WL 10669316, at *3–4 (W.D. Tex. Aug. 5, 2009), *report and recommendation adopted*, No. SA-08-CA-709, 2009 WL 10669376 (W.D. Tex. Sept. 20, 2009); *Drinkwater v. Mukasey*, No. 8-371, 2009 WL 467809 (W.D. Okla. Feb. 24, 2009) (finding regulations prohibited the district court's jurisdiction over enforcement of former government employee's alleged oral settlement agreement during EEOC proceedings and suggesting district courts only have jurisdiction over the underlying

---

[3] The government agreed at oral argument *VanDesande* is binding precedent which the Court must follow. Tr. at 16:7–11 ("THE COURT: . . . *VanDesande* has not been overruled or abrogated, correct? [THE GOVERNMENT]: Correct, Your Honor. THE COURT: So the Court has to follow it? [THE GOVERNMENT]: That's correct, Your Honor.").

discrimination claim).  In *Mata*, the EEOC decided the government did not breach a negotiated settlement agreement and denied reconsideration; the plaintiff then filed in a district court, which dismissed the case for lack of jurisdiction and transferred the case to this court.  *See* 2009 WL 10669316, at *3–4 ("Jurisdiction exists in the United States Court of Federal Claims but not in this Court."); *see also Mata v. United States*, 114 Fed. Cl. 736 (2014) (this court ruling on cross-motions for summary judgment following transfer of the case from district court).  At oral argument, the Court asked the government if, had plaintiff filed in district court instead of this court, a district court would have transferred the case to this court for jurisdictional reasons, and the government agreed "that does seem likely."  Tr. at 16:18–24.   The lack of an alternative venue further supports this court as the appropriate venue for a determination of the existence of and breach of plaintiff's alleged settlement agreement.  *See VanDesande*, 673 F.3d at 1346 n.2 ("Simply because an employee chooses to initially pursue enforcement through the EEOC does not preclude her from later seeking enforcement in a court of competent jurisdiction.").

    At oral argument, the government contended it was plaintiff's choice to seek EEOC review of whether a binding settlement agreement existed that prevented her from seeking later review of the same question in another venue; if she had stayed her EEOC proceedings and come directly here, the government argues, the preclusion argument would not apply.  *See* Tr. at 20:24–25 ("[THE GOVERNMENT]:  . . . [O]nce the plaintiff has elected to proceed in the EEOC forum, that EEOC decision is final.").  When asked what case supports the position some EEOC decisions are unappealable, the government cited the Fourth Circuit's *Frahm v. United States* decision.  *See* Tr. at 21:16–22:13 (the government's counsel citing 492 F.3d 258, 262 (2007)).  In *Frahm*, however, this court, the district court, and the circuit court all agreed the settlement agreement at issue did not contemplate monetary damages, unlike the alleged settlement agreement here.  492 F.3d at 261 ("[T]he claims court also found that the settlement agreement itself did not expressly require or authorize the government to pay damages in case of breach, and therefore was not a contract within the court's jurisdiction under 28 U.S.C. § 1491."); *id.* at 262 ("The district court determined [the plaintiff] is not entitled to [monetary] relief . . . [because] the language of the settlement agreement does not allow for monetary damages as a remedy in case of breach . . . .  Nowhere does the settlement agreement contemplate monetary damages for [the plaintiff] in case of the [government]'s breach.").  The government further agreed at oral argument the Fourth Circuit took a different position in *Frahm* than the Federal Circuit's ruling in *Holmes* on the existence of federal court jurisdiction to enforce Title VII settlement agreements.  Tr. at 29:8–12 ("[THE GOVERNMENT]:  . . . [T]his is an instance of different circuits having different law.  The Federal Circuit has held clearly that this sort of breach claim is cognizable before the Court of Federal Claims.  Here, the Fourth Circuit is coming to a different conclusion.").  As *Frahm* espouses different law than binding precedent for the Court, and does not relate to a contract contemplating monetary damages, the Court finds it distinguishable and not persuasive in this case.  *See id.*; *Frahm*, 492 F. 3d at 261–62.

    The Court further considers whether the Civil Rights Act of 1964 and its implementing regulations strip the Court of jurisdiction to review the existence of a binding settlement agreement with the government.  The government's Reply cited the Federal Circuit's en banc *Slattery* decision, which provides the standard for jurisdiction-stripping as to the Tucker Act.  *See* Gov't's Reply at 5 (citing *Slattery v. United States*, 635 F.3d 1298, 1321 (Fed. Cir. 2011) (en

banc)).  "[T]he plain text of the Civil Rights Act of 1964 and its implementing regulations," the government argues, "limits jurisdiction over civil actions based on EEOC decisions to Federal district courts."  *Id.* (first citing 42 U.S.C. § 2000e-5(f)(3); and then citing 29 C.F.R. § 1614.407(c)).  *Slattery* provides:  "when a government agency is asserted to have breached an express or implied contract that it entered on behalf of the United States, there is Tucker Act jurisdiction of the cause unless such jurisdiction was *explicitly* withheld or withdrawn by statute . . . ."  635 F.3d at 1320–21 (emphasis added).  The Court therefore examines in turn whether the Civil Rights Act of 1964 or its implementing regulations explicitly withhold or withdraw this court's jurisdiction.

The allegedly jurisdiction-stripping provision of the Civil Rights Act of 1964 states: "Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e-5(f)(3).  The government ignores the last clause, "of actions brought under this subchapter."  *See id.*  At oral argument, the government asserted plaintiff's claim was "brought under this subchapter."  Tr. at 36:12–18 ("THE COURT:  . . . [T]he claim [plaintiff] is bringing is brought under this subchapter for the purposes of necessitating review by the district court?  [THE GOVERNMENT]:  Review of an EEOC decision, yes, Your Honor, is governed by this statutory provision that you cited and is a review under this subchapter, yes.").  Plaintiff's case, however, is brought under the Tucker Act, not "this subchapter" (the Civil Rights Act of 1964) because plaintiff is disputing the existence of a binding contract with the government, not any findings as to the merits of plaintiff's underlying employment discrimination claim or any other claim authorized by the Civil Rights Act of 1964.  *See id.*; 28 U.S.C. § 1491; Tr. at 39:6–13 ("THE COURT:  . . . [Y]ou agree then [plaintiff]'s claim is not an underlying discrimination claim, and it's not under the subchapter of the Civil Rights Act.  [THE GOVERNMENT]:  I believe . . . in general, that the claim of breach is a Tucker Act claim, that's correct.").  The government acknowledged at oral argument the Civil Rights Act of 1964 "does not appear to be . . . written with this sort of claim in mind.  It's written with the intent of review on the merits where these discrimination claims then proceed in district court, and the district court possesses exclusive jurisdiction over claims of discrimination."  Tr. at 19:1–7 (the government's counsel). While the Civil Rights Act of 1964 does grant district courts jurisdiction over review of discrimination claims at issue in EEOC proceedings, it does not "explicitly with[o]ld or withdraw[]" Tucker Act jurisdiction over claims for breach of government contracts formed during EEOC proceedings.  *See Slattery*, 635 F.3d at 1320–21.

The allegedly jurisdiction-stripping regulation provides:  "A complainant who has filed an individual complaint . . . is authorized under [T]itle VII, the ADEA, the Rehabilitation Act, and Genetic Information Nondiscrimination Act to file a civil action in an appropriate United States [d]istrict [c]ourt . . . ."  29 C.F.R. § 1614.407.  The plain meaning of "authorize" is "To give permission for; sanction."  *Authorize*, THE AMERICAN HERITAGE COLLEGE DICTIONARY (3d ed. 1997).  The regulation therefore recognizes "[T]itle VII, the ADEA, the Rehabilitation Act, and Genetic Information Nondiscrimination Act" as "giv[ing] permission for" an EEOC complainant "to file a civil action in an appropriate United States [d]istrict [c]ourt."  *Id.*; 29 C.F.R. § 1614.407.  While the regulation affirmatively grants district courts jurisdiction through the "authorized" language, it does not "explicitly with[o]ld or withdraw[]" Tucker Act jurisdiction over claims for breach of government contracts formed during EEOC proceedings.

*Slattery*, 635 F.3d at 1320–21.

The government additionally contended at oral argument the Federal Circuit's *Townsend* decision supports a finding of preclusion here.  Specifically, the government argued footnote one in *Townsend* "raises the possibility of claims being foreclosed by issue preclusion."  Tr. at 42:1–6.  The footnote states:

> [The plaintiff]'s allegation of noncompliance with the July 2008 settlement agreement was addressed and rejected by the EEOC.  Many of the same allegations were also at issue in the Merit Systems Protection Board proceeding, where the administrative judge upheld the charges against [the plaintiff] after an adversary hearing at which she was given the opportunity to call witnesses and cross-examine the witnesses against her.  Thus, even if the Court of Federal Claims had treated her settlement agreement allegations as constituting a separate breach-of-contract claim, the claim would appear to be foreclosed by the doctrine of issue preclusion based on the prior Merit Systems Protection Board and EEOC decisions.  *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (giving preclusive effect to prior administrative determination); *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) ("[I]t is sound policy to apply principles of issue preclusion to the fact-finding of administrative bodies acting in a judicial capacity."); *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) (same); *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996) (administrative agency decision may be given preclusive effect in subsequent court action unless Congress has indicated it intended otherwise).

*Townsend v. United States*, 468 F. App'x 962, 966 n.1 (Fed. Cir. 2012).  The government, however, acknowledged footnote one is dicta, Tr. at 41:23–24 ("[THE GOVERNMENT]:  . . . If we're looking at this case for dicta, we'd look at footnote one . . . ."), and *Townsend* "does [not] squarely present the question that we have today."  Tr. at 41:7–14.  Further, *Townsend* was decided two years before the exception to claim preclusion was noted in *Cunningham*.  The Court nevertheless examines whether *Townsend* is persuasive on the question of preclusion.

The procedural history of *Townsend* is winding.  The *Townsend* plaintiff first brought an EEOC complaint and entered into a settlement agreement with the government.  468 F. App'x at 963.  The plaintiff was then terminated and appealed her termination to the Merit Systems Protection Board before filing a complaint in district court.  *Id.* at 964.  The district court understood the plaintiff's breach of contract claim "to be based on her contention that the [government] had breached the EEOC settlement agreement in 2009.  The [district] court noted that it did not have jurisdiction to address that claim and that contract claims against the government are ordinarily within the jurisdiction of the Court of Federal Claims."  *Id.*  The court of appeals affirmed the district court and agreed jurisdiction was proper in the Court of Federal Claims.  *Id.*  The *Townsend* plaintiff then filed a case in this court but argued the breach of contract was in reference to her employment contract rather than the settlement agreement, although the Federal Circuit stated on appeal the "complaint alluded to the agency's asserted

breach of the EEOC settlement agreement." *Id.* This court "held . . . she had failed to allege in her complaint or in any other submission [at the Court of Federal Claims] any facts that would give rise to a valid contract claim within the court's jurisdiction, because the benefits of federal employment flow from appointment, not from a contractual or quasi-contractual relationship." *Id.* at 965. This course of proceedings supports the inference *Townsend*'s footnote on preclusion is indeed dicta, as a claim for a breach of the settlement agreement was not before this court and therefore not before the Federal Circuit. *See id.* at 964–65.

The Court next looks to the cases cited in the *Townsend* footnote. At oral argument, plaintiff asserted "several of the cases cited there, including the *Astoria* and the *University of Tennessee* cases, frame the state administrative agencies' determinations as something of a funnel to weed out cases where a complainant can reach an outcome that is preferable within these state administrative agencies." Tr. at 43:18–44:3. Plaintiff argued the state administrative agency process "is not a substitute for access to the federal courts, so in which case a complainant is not happy with the administrative remedy that she was provided, she could still [seek] de novo review . . . and that's what we're doing here." *Id.* The Court also notes *Utah Construction & Mining* focused on giving preclusive effect to factual, not legal, determinations by administrative agencies: "When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." 384 U.S. at 422. The same finding is quoted in *Astoria*, 501 U.S. at 107, and *University of Tennessee*, 478 U.S. at 797–98, and cited in *Texas Instruments*, 90 F.3d at 1568. "In the absence of factual disputes, the question of contract formation is a question of law." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). As the EEOC's determination here was on contract formation, a question of law, the *Townsend* footnote cases regarding giving preclusive effect to agency determinations on questions of fact are not persuasive to the Court. *See id.*; *Utah Construction & Mining*, 384 U.S. at 422; *Astoria*, 501 U.S. at 107; *University of Tennessee*, 478 U.S. at 797–98; *Texas Instruments*, 90 F.3d at 1568.

The government's position traps plaintiff in a labyrinth with no escape for jurisdiction:

[I]n this case, w[h]ere the claim [arises] from a final decision of the EEOC, then the statute requires review in district court, the district court finds it lacks jurisdiction under the Tucker Act, there does not appear to be anywhere to go after that point. Once a plaintiff has made the forum election of the EEOC, there is then not an opportunity to go back, reconsider that decision, and try to make a separate attack by proceeding along the other path and coming to the Court of Federal Claims.

Tr. at 19:8–16 (the government's counsel). In the government's view, plaintiff cannot seek direct review of the EEOC decision in a district court because it would not have jurisdiction over a claim of breach of a government contract with damages greater than $10,000. Although this court has jurisdiction, the government argues plaintiff's claims here must be dismissed because they are precluded by the final EEOC decision and direct review is only available in a district court. The government agreed at oral argument it is asking the Court to find the EEOC decision in this case is "effectively unappealable" without supporting caselaw. Tr. at 32:16–22 ("THE

COURT:  . . . You're asking me to find that the EEOC decision is final, and it's effectively unappealable; the plaintiff is out of luck.  There's no case that says that.  [THE GOVERNMENT]:  Essentially so, Your Honor, yes.  We would acknowledge we're presenting a new argument to you.").  Such reasoning directly contradicts the Federal Circuit's statement in *VanDesande*:  "Simply because an employee chooses to initially pursue enforcement through the EEOC does not *preclude* her from later seeking enforcement in a court of competent jurisdiction."  673 F.3d at 1346 n.2 (emphasis added).  In response to the government's "[a]dmittedly . . . novel argument," Tr. at 15:24 (the government's counsel), the Court recites the circuit's warning:  "The Government would be well advised to avoid taking positions . . . that open it up to the criticism that it has used its overwhelming resources to whipsaw a citizen into submission."  *VanDesande*, 673 F.3d at 1351.  As the Federal Circuit stated in *Cunningham*, this court has jurisdiction to "enforce the underlying settlement agreement" not "to enforce the [agency]'s order."  *Cunningham*, 478 F.3d at 1178.  The remedies available at this court are not available at the EEOC.  *Compare* 28 U.S.C. § 1491(a)(1), *with*, 29 C.F.R. § 1614.504(c).  The EEOC only permits specific performance or reinstatement of a complaint.  *See* 29 C.F.R. § 1614.504(c).  Plaintiff's claim for damages accordingly falls into the exception to claim preclusion identified in *Cunningham*.  The Court therefore finds the government has not established claim preclusion applies and therefore denies the government's Motion to Dismiss as to claim preclusion.  *See Cunningham*, 478 F.3d at 1178.

## III.   Failure to State a Claim

### A.   Parties' Arguments

The government contends plaintiff does not properly plead unambiguous offer and acceptance and authority to bind the government.  "[T]he purported settlement agreement that Ms. Abare alleges lacks discussion of key terms that remained to be agreed upon[,]" the government asserts.  MTD at 9.  The government argues the relevant emails do not include terms regarding plaintiff's "withdrawal of her claim and her admission that USPS has no fault or liability, a waiver of other claims by both parties, . . . a non-disparagement agreement[,]" or a disability retirement application.  *Id.* at 9–10.  The government also emphasizes language in the emails and the joint report such as "agreement in principle" and "finalizing" to characterize the agreement as tentative and therefore "not manifest[ing] unambiguous offer and acceptance."  *Id.* at 10 (quoting 17 May 2021 J. Report at 3; and then quoting May 2021 Emails at 2).  On the authority issue, the government contends plaintiff misplaces the burden by pleading USPS counsel did not convey he lacked authority rather than affirmatively pleading USPS counsel had authority.  *Id.* at 11.  The government further argues plaintiff "does not allege any basis from the 'Constitution, a statute, or a regulation' for the proposition that [USPS counsel] had actual authority to settle her claims[,]" citing caselaw on express authority.  *Id.* at 12 (quoting *Tracy v. United States*, 55 Fed. Cl. 679, 682 (2003)).  Neither does plaintiff properly allege implied authority, according to the government, because plaintiff "does not explain how settling claims is 'an integral part' of [USPS counsel's] duties as a line attorney."  *Id.* (quoting *McAfee v. United States*, 46 Fed. Cl. 428, 435 (2000)).

Plaintiff responds the "obligations under the settlement contract are readily ascertainable."  Pl.'s Resp. at 12.  When the government's offer of $180,000 only addressed the

monetary term, the other terms—withdrawing the claim, mutual release, and disability retirement—from plaintiff's 7 April 2021 offer were implicitly incorporated, plaintiff contends. *Id.* On the issue of authority, plaintiff asserts because "the parties were ordered to have 'authority to settle the complaint during the Initial Conference,' it was understood by [plaintiff's attorney] that this offer—which came from [USPS counsel's] client—had the appropriate authority." *Id.* at 16 (quoting EEOC Order Scheduling Initial Conference at 2) (emphasis omitted). Plaintiff further argues "discovery into the communications the settlement authority had with [USPS counsel] to make the United States' settlement offer on May 17, 2020" is necessary to determine the issue of actual authority, and actual authority is therefore inappropriate to address on a motion to dismiss. *Id.* at 17.

The government replies plaintiff "does not indicate that any of [the] terms [of plaintiff's 7 April 2021 offer] had been accepted by USPS." Gov't's Reply at 7. Further, the government contends plaintiff's arguments on authority "correspond at best to apparent authority, which does not bind the United States." *Id.* at 8. Regarding the administrative judge's order requiring settlement authority, the government asserts "a judge's order cannot create authority where it is lacking." *Id.* at 9 (citing *McAfee*, 46 Fed. Cl. at 435 ("A government agent possesses express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms.")). The government additionally argues USPS counsel's "representations concerning his authority, if he made any—and even his subjective understanding of his authority—cannot suffice to bind the United States." *Id.* at 10. Plaintiff's statements regarding discovery, the government contends, are premature because she has not carried her burden of pleading authority. *Id.*

### B.    Applicable Law

Under RCFC 12(b)(6), a party may assert by motion the defense of failure to state a claim upon which relief can be granted. A defendant may seek dismissal of an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility requires plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When deciding a motion to dismiss under RCFC 12(b)(6), the Court "must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Athey v. United States*, 908 F.3d 696, 705 (Fed. Cir. 2018) (quoting *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014)). The Court, however, is "not required to accept the asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019) (citing *Iqbal*, 556 U.S. at 678).

To state a claim for a government breach of contract, a plaintiff must plausibly allege the existence of a contract with the United States, which requires: "(1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." *Hometown Fin., Inc. v. United States*, 409 F.3d 1360, 1364 (Fed. Cir. 2005). These requirements "are identical for both express and implied

contracts." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).  Plaintiff must also prove a breach of contract by showing "a failure to perform a contractual duty when it is due."  *Id.* (citations omitted).

A government representative may have express or implied authority to contract.  *See Salles v. United States*, 156 F.3d 1383, 1384 (Fed. Cir. 1998).  "A government agent possesses express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms."  *McAfee*, 46 Fed. Cl. at 435 (citing *Garza v. United States*, 34 Fed. Cl. 1, 17 (1995)).  A government representative's authority is "generally implied when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee."  *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989) (alteration in original) (quoting John Cibinic & Ralph C. Nash, FORMATION OF GOVERNMENT CONTRACTS 43 (1982)).  "The word integral has been interpreted to mean 'essential' or 'necessary to form a whole.'"  *Roy v. United States*, 38 Fed. Cl. 184, 189 (1997) (quoting *Cruz-Pagan v. United States*, 35 Fed. Cl. 59, 61 (1996)).  "[Contracting] [a]uthority is integral 'when the government employee could not perform his or her assigned tasks without such authority.'"  *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1402 (Fed. Cir. 2016) (quoting *Flexfab, LLC v. United States*, 62 Fed. Cl. 139, 148 (2004), *aff'd*, 424 F.3d 1254 (Fed. Cir. 2005)).  Contracting authority is also integral "when the relevant agency's regulations do not grant the authority to other agency employees."  *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2007) (citing *Leonardo v. United States*, 63 Fed. Cl. 552, 557 (2005), *aff'd*, 163 F. App'x 880 (Fed. Cir. 2006)).  "[A] person with no actual authority may not gain actual authority through the court-made rule of implied actual authority."  *Cal. Sand & Gravel, Inc. v. United States*, 22 Cl. Ct. 19, 27 (1990), *aff'd*, 937 F.2d 624 (Fed. Cir. 1991) (per curiam).

## C.  Whether Plaintiff's Complaint Must Be Dismissed for Failure to Allege a Breach of Contract Claim

At the motion to dismiss stage, the government only contends plaintiff has failed to allege the offer and acceptance and the actual authority elements of contract formation.  *See* MTD at 8 ("Even if Ms. Abare could demonstrate . . .  a mutuality of intent or an exchange of consideration—which we do not concede—her argument nevertheless fails because she does not plausibly allege . . . a lack of ambiguity in offer and acceptance or actual authority.").  The Court therefore does not analyze mutual intent or consideration.  *See id.*

### 1.  Whether Plaintiff Plausibly Alleges Unambiguous Offer and Acceptance

The government argues:  (1)  the description "agreement in principle" bars a finding of offer and acceptance; and (2) the email discussions do not address all key terms.  The Court addresses each in turn.

The Court first analyzes whether the parties' use of the description "agreement in principle" prevents the Court from finding plaintiff has plausibly alleged unambiguous offer and acceptance.  The government cites caselaw for the proposition "agreements in principle" and those described as "tentative" are not binding.  *See* MTD at 8–9 (first citing *Skycom Corp. v.*

*Telstar Corp.*, 813 F.2d 810, 815 (7th Cir. 1987); then citing *Spahn v. Sec'y of Health & Hum. Servs.*, 133 Fed. Cl. 588, 604 (2017); then citing *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 79–80, 83 (2d Cir. 1985); and then citing *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 261 (2d Cir. 1984)). These cited cases, however, are from other circuits or this court—none are binding on the Court. *See id.* In the absence of a similar brightline rule adopted by the Federal Circuit, the Court declines to find the "agreement in principle" language conclusive at the pleadings stage of this case and instead looks to "the surrounding factual circumstances" as the Federal Circuit has instructed. *See Hometown Fin.*, 409 F.3d at 1365 (citing *Cal. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1347 (Fed. Cir. 2001)) ("Whether a bargained-for exchange occurred depends on the surrounding factual circumstances.").

The parties also dispute whether the email exchanges between plaintiff's and the government's EEOC counsel plausibly incorporates key terms from a previous settlement offer. The government argues the emails include only discussion of price and fail to discuss "terms that were included in the formal settlement proposal [plaintiff's attorney] emailed to [USPS counsel] on December 11, 2020, such as Ms. Abare's withdrawal of her claim and her admission that USPS has no fault or liability, a waiver of other claims by both parties, or a non-disparagement agreement." MTD at 9. The parties' May 2021 emails, however, must be viewed in the context of the ongoing settlement discussions as alleged in plaintiff's Complaint. Settlement discussions first began on 11 December 2020 when plaintiff's attorney emailed USPS counsel and provided "specific settlement terms, including waiver and withdrawal of claims, monetary payment amounts, and the expiration of the offer." Compl. ¶ 13. Plaintiff's counsel made a second settlement offer on 7 April 2021, "providing a waiver and withdrawal of claims, a provision to facilitate [plaintiff]'s retirement application, and the monetary payments." Compl. ¶ 17; *see* Tr. at 48:18–49:4 ("THE COURT: . . . [F]irst, plaintiff alleges that there was a pending settlement offer from plaintiff that was made on 7 April 2021, 'providing a waiver and withdrawal of claims, a provision to facilitate plaintiff's retirement application and the monetary payments.' Do you agree with that? [THE GOVERNMENT]: That's correct, from paragraph 17 of the Complaint."). At oral argument, plaintiff clarified this offer "included two sections, one, the waiver withdrawal of claim, which went into detail about what that meant, as well as the monetary terms and the attorneys' fees." Tr. at 49:5–14. Plaintiff further contended "there had been discussions in between the first and the second [offer] that . . . narrow[ed] down the issue [to] just the monetary payments." Tr. at 56:4–6. With the 7 April 2021 offer pending, representatives for the parties discussed settlement during a phone call on 17 May 2021, and USPS counsel represented USPS "was willing to settle the matter for $180,000." Compl. ¶ 19; *see* May 2021 Emails at 3–4. Following the phone call, the parties clarified the damages figure proposed by the government over email. May 2021 Emails at 3 (plaintiff's attorney asking USPS counsel, "[W]hat is your client's current offer to my client?" and USPS counsel responding, "$180[,000] inclusive of comp[ensation] and att[orney's] fees."); Compl. ¶ 20. Plaintiff's representative stated over email "My client accepts this offer." May 2021 Emails at 3; Compl. ¶ 20. Given the pending 7 April 2021 offer from plaintiff, with the key terms regarding waiver and withdrawal of claims included, it is plausible the government made a counteroffer changing only the amount of monetary compensation, so the emails reference only this changed term. *See* May 2021 Emails at 3; Tr. at 52:19–53:4 ("THE COURT: So with respect to the standard to survive a motion to dismiss, don't those facts plausibly allow the Court to draw the reasonable inference that the government [made] a counteroffer to plaintiff's pending 7 April

written offer, changing only the monetary amount, and that plaintiff accepted that? [THE GOVERNMENT]: We agree that that's a possibility."). The government contends the Court cannot rely on the 7 April 2021 offer for the non-monetary key terms because "once there's a counteroffer, the original offer is no longer valid." Tr. at 50:5–14. The question the Court faces, however, is not whether the 7 April 2021 offer was accepted; if it was, whether the 7 April 2021 offer was valid would be relevant. The question is whether plaintiff has plausibly pled the government's counteroffer incorporated key terms from the 7 April 2021 offer; the validity of the 7 April 2021 offer is not relevant, but the context the 7 April 2021 offer provides to the 17 May 2021 counteroffer from the government is relevant. Without contradictory evidence from the government regarding the contents of discussion during the 17 May 2021 phone call, plaintiff has alleged sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" because the course of negotiations leading up to the 17 May 2021 emails and phone call included the key terms the government argues are missing from the alleged agreement. *Iqbal*, 556 U.S. at 678.

### 2.  Whether Plaintiff Plausibly Alleges Authority to Bind the Government

The parties dispute whether plaintiff plausibly alleges USPS counsel, who participated in negotiations with plaintiff's attorney during the EEOC proceedings, had authority to bind the government. The Court notes at the outset plaintiff cites caselaw regarding apparent authority. *See* Pl.'s Resp. at 3 n.1 (first citing *Hays v. Fischer*, 777 P.2d 222, 227 (Ariz. Ct. App. 1989); and then citing *Robertson v. Alling*, 351 P.3d 352 (Ariz. 2015)). "[A]pparent authority will not suffice to hold the government bound by the acts of its agents." *H. Landau & Co.*, 886 F.2d at 324 (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). At oral argument, plaintiff clarified she argues implied actual authority, not apparent authority. *See* Tr. at 58:10–19 ("THE COURT: . . . [A]re you alleging apparent authority? [PLAINTIFF]: . . . [W]e are alleging that he had . . . actual authority to enter into this agreement . . . THE COURT: So actual authority, not apparent authority? [PLAINTIFF]: Correct."); Tr. at 59:20–24 ("THE COURT: . . . Do you allege implied actual authority? [PLAINTIFF]: . . . [I]t was definitely implied that he had settlement authority during these discussions."). The Court therefore does not consider the issue of apparent authority but only the issue of implied actual authority. *See id.*

Although the procedural history is different, the *Bullock v. United States* decision from this court and the opinion on appeal from the Federal Circuit are instructive on the issue of authority. The complaint in *Bullock*, like plaintiff's Complaint, alleged breach of a settlement agreement formed during EEOC proceedings but did not explicitly allege the government attorney involved in the EEOC proceedings had express or implied authority. *See* Compl., ECF No. 1, *Bullock v. United States*, No. 17-445 (Fed. Cl. Mar. 28, 2017). This court granted the government's motion to dismiss pursuant to RCFC 12(b)(1) because the plaintiff had not established jurisdiction over a contract claim on the basis of authority. *Bullock*, 136 Fed. Cl. 29, 32–33 (2018), *judgment vacated on reconsideration*, 145 Fed. Cl. 403 (2019), *rev'd and remanded*, 10 F.4th 1317 (Fed. Cir. 2021). This court then granted the plaintiff's motion for reconsideration based on a case from the Eastern District of New York which found "government attorneys making settlement representations before tribunals are presumed to have settlement authority, i.e., actual authority, unless they explicitly advise the tribunal otherwise."

Order Granting Recons., ECF No. 35, *Bullock*, No. 17-445 (Fed. Cl. May 7, 2017) (citing *United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less*, 423 F. Supp. 2d 14 (E.D.N.Y.), *adhered to in part on reconsideration*, 429 F. Supp. 2d 577 (E.D.N.Y. 2006), *aff'd*, 242 F. App'x 750 (2d Cir. 2007)). Following reconsideration, the parties briefed summary judgment, and this court entered summary judgment for the government on a different issue. *Bullock*, 145 Fed. Cl. 403, 408 (2019), *rev'd and remanded*, 10 F.4th 1317 (Fed. Cir. 2021). On appeal, the Federal Circuit acknowledged this procedural history, reversed on the unrelated summary judgment issue, and remanded to consider authority as a factual issue. *Bullock*, 10 F.4th at 1318–20, 1325. As the circuit instructed this court on remand to consider authority as a summary judgment—rather than pleadings—issue after reciting the procedural history of the case, *Bullock* supports a similar finding here: the question of USPS counsel's authority during settlement negotiations is a summary judgment issue, not a pleadings issue.[4] *See id.*

The government additionally cites an EEOC Management Directive as support for the proposition USPS counsel would not have had settlement authority. *See* MTD at 12; Gov't's Reply at 9–10. The Directive provides the EEO alternative dispute resolution ("ADR") neutral must "strive to ensure: . . . That an agency representative participating in EEO ADR has the authority and responsibility to negotiate in good faith and that a person with authority to approve or enter into a settlement agreement is accessible to the agency's representative." U.S. Equal Employment Opportunity Comm'n, EEOC Management Directive for 29 C.F.R. Part 1614 (EEO-MD-110), ch. 3, § V.C.3 (2015) [hereinafter EEOC Directive]. The ADR neutral presiding over plaintiff's case entered an order requiring each party's representative to "have the authority to settle the complaint during the Initial Conference." Order Scheduling Initial Conference at 2. The government, however, alleges the EEOC Directive only "appl[ies] to the initial conference, not to negotiations happening outside of court." Tr. at 74:14–20 ("THE COURT: So the EEOC Management Directive does not apply to the initial conference? [THE GOVERNMENT]: Correct, Your Honor."). While the administrative judge required the settlement representatives to have settlement authority, the Directive imposes a lower burden as a general rule: settlement representatives need only be able to *access* a person with settlement authority. *See* EEOC Directive, ch. 3, § V.C.3. Even though the administrative judge chose to impose a higher burden than the Directive, the issue at the motion-to-dismiss stage is whether it is plausible USPS counsel had settlement authority. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. The EEOC Management Directive therefore fails to support the government's argument "the government do[es] not [plausibly] possess settlement authority" in this case. Tr. at 73:19–23.

The parties disagree whether plaintiff pled sufficient facts to plausibly allege the

---

[4] The EEOC decision notably cites a variety of older, historical EEOC decisions to support its determination no settlement agreement existed. When the Court asked the government at a status conference whether the cited cases were still good law after *Bullock*, the government indicated they were not. 1 Mar. 2023 Status Conference Hearing Tr. at 8:13–17, ECF No. 13 ("THE COURT: . . . [The EEOC] cited a number of cases which . . . would not be good cases after *Bullock*, correct? [THE GOVERNMENT]: That's correct, Your Honor."). The government changed its position at oral argument, however, indicating the government was "unable to . . . speak on behalf of the EEOC how they would view their precedent in light of *Bullock*." Tr. at 7:13–15. The Court nevertheless determines, in light of *Bullock*, plaintiff has alleged sufficient facts to overcome a motion to dismiss. *See Bullock*, 10 F.4th at 1318–20, 1325.

authority element of contract formation.  Plaintiff contends the administrative judge's order, as pled in the Complaint, makes clear USPS counsel was required to have settlement authority.  *See* Compl. ¶¶ 12–13; Tr. at 65:24–66:6 ("[PLAINTIFF]:  Paragraph 12 explains that on November 20th, 2020, the EEO Commission issued an order scheduling an initial conference. . . .  In that order, it requires the parties must discuss specific settlement proposals.  The representatives for a complainant and the agency *shall have authority* to settle the complaint during the initial conference." (emphasis added)).  The order did instruct the parties to ensure their representatives had settlement authority for the initial conference:  "Prior to the teleconference, the parties are directed to contact each other to define the claim(s) and to discuss settlement.  The parties must discuss specific settlement proposals.  The representatives for Complainant and the Agency *should have the authority* to settle the complaint during the Initial Conference."  Order Scheduling Initial Conference at 2 (emphasis added).  The government responds with two arguments:  (1) USPS counsel could retain authority only for the initial conference, but not afterward, when the alleged settlement agreement was negotiated; and (2) this order cannot create authority USPS counsel was otherwise lacking.  *See* Tr. at 66:9–12; Tr. at 70:3–11.  The Court addresses each in turn.

The first issue is whether the time limitation in the administrative judge's order means plaintiff has not plausibly alleged USPS counsel had authority.  The government agreed at oral argument a government representative with settlement authority was likely present at the initial conference to comply with the order.  *See* Tr. at 70:3–11 ("THE COURT:  . . . [I]n January 2021, you agree that a government representative . . . did have authority.  [THE GOVERNMENT]:  It's possible.  The order of the administrative judge said that somebody with authority was there.  We can assume he had authority.  We don't know what level of authority he had, what dollar amount, what terms.  That's, of course, not present here.").  The government, however, argues at the time of the negotiations, "the initial conference had already happened.  So whatever this administrative judge's order applied to is no longer applicable in the later negotiation that we're talking about."  Tr. at 68:1–4.  The negotiations, however, did not occur long after the initial status conference with other proceedings occurring between; the administrative judge "entered a temporary stay in the hearing process to allow the parties to mediate the matter" directly after the initial conference.  Compl. ¶ 15.  The Court can infer USPS counsel had authority at the initial conference, the negotiations followed directly after, and as plaintiff alleges, "[a]t no point did [USPS counsel] indicate that he lacked settlement authority or that the offer pended client approval."  *Id.* ¶ 20.  The government alleges "We don't know what occurred."  Tr. at 50:13–14.  While the government proposes a possible scenario—USPS counsel had authority *only* for the initial conference and did not have any for the immediately following negotiations—this possibility cannot defeat the plausibility of what plaintiff has alleged:  USPS counsel continued to have authority from the time of the initial conference.  *See id.* ¶¶ 15, 20; *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

The second issue is whether an administrative judge's order can create authority.  The Court first clarifies this analysis pertains to the two types of actual authority—express and implied—and not apparent authority discussed *supra*.  The government contended at oral argument the order could not "create express authority because . . . it's not a statute, it's not a regulation."  Tr. at 66:9–12.  The government is correct the order cannot be a basis for *express* actual authority as express actual authority is "defined by Congress or through the rule-making

power"—neither of which an administrative judge's order is. *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (quoting *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). The parties have not cited any caselaw, however, on whether an order can create *implied* actual authority. *See* MTD; Pl.'s Resp; Gov't Reply. Plaintiff does not have to cite a particular statute or regulation to allege implied actual authority; plaintiff need only show "such authority is considered to be an integral part of the duties assigned to a [g]overnment employee." *H. Landau & Co.*, 886 F.2d at 324 (quoting CIBINIC & NASH, *supra*, at 43). The government asserted at oral argument the Complaint does not contain the needed allegations settlement is part of USPS counsel's job to support a finding of implied actual authority. *See* Tr. at 78:3–7. While USPS counsel might not always have authority to settle cases, given the administrative judge's order requiring settlement authority, having authority to settle this particular case may have been integral to USPS counsel's duties because he could "could not perform his . . . assigned task[]" of representing the government in this matter and complying with the administrative judge's order "without such authority.'" *Liberty Ammunition*, 835 F.3d at 1402. As this question of law is unsettled and the parties did not brief it, the Court declines to dismiss the case on these grounds. Given plaintiff's allegations regarding the administrative judge's order, the timing of the negotiations in reference to the initial conference, and the representations or lack thereof from USPS counsel, the Court finds plaintiff has plausibly alleged authority to survive a motion to dismiss. *See id.*; Compl. ¶¶ 12, 15, 20; *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

The Court finds plaintiff has plausibly alleged both offer and acceptance and actual authority and therefore denies the government's Motion to Dismiss as to failure to state a claim. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

## IV.     Conclusion

For the foregoing reasons, the Court **DENIES** the government's Motion to Dismiss, ECF No. 6. Consistent with the agreement of the parties at oral argument,[5] the parties **SHALL** meet and confer regarding proceeding with limited discovery into the issue of authority and **SHALL FILE** a joint status report **on or before 10 October 2023** suggesting a schedule for further proceedings in this case.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge

---

[5] Tr. at 78:12–22 ("[THE GOVERNMENT]: . . . [O]n the authority question, if Your Honor wishes to follow the procedure that was engaged in in *Bullock*, we can convert our motion to one for summary judgment, provide a declaration or affidavits from the relevant parties, and if Ms. Abare wants to, under Rule 56(d), . . . seek a limited amount of discovery in order to respond, the Court can entertain that motion. THE COURT: [Plaintiff], any response on [the government]'s suggestion there? [PLAINTIFF]: We would be fine with that.").